Alphonse Fletcher, Jr.
188 Minna Street
San Francisco, CA

January 6, 2015

**BY ECF FILING AND EMAIL**

The Honorable Analisa Torres
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

I thank the Court for the opportunity to oppose the letter sent the evening of December 24, 2014 by the chapter 11 trustee ("Trustee") of Fletcher International, Ltd. ("Debtor') containing *ad hominen* attacks and bogus issues of standing and mootness ("Trustee's Letter"). In June 2012, Credit Suisse wrongly seized more than $30 million of the Debtor's assets forcing it to file for chapter 11 protection days later. Instead of "protection," the Debtor suffered grave injury when its faithless "fiduciaries" wrongly transferred its assets for the benefit of the fiduciaries' more favored clients. It is understandable that the Trustee, his advisors, and Debtor's former counsel (collectively the "Fiduciaries") invest so heavily in thwarting a substantive review of these matters on the merits. The record in these proceedings reveals that the Fiduciaries and their allies have connived to violate Federal Rules of Bankruptcy Procedure so brazenly as to beg the question:

> "What could have motivated these accomplished professionals
> to take such personal and professional risks?"

I have standing. The appeal is not moot. The Settlement is less than reasonable and should be rescinded.

- One or more of the pending proceedings may expose the fraud that has been perpetrated upon the Court by the Fiduciaries. If so, assets would be restored to the Debtor provided benefit to all rightful stakeholders including me. Therefore we have standing.[1]

- Contrary to the Trustee's Letter's suggestions the one-sided settlement has not been addressed by the District Court. The Trustee's arrangement would forfeit 100% of the Debtor's claims against Credit Suisse, claims potentially exceeding $30 million, allows Credit Suisse to maintain millions of claims related to its indirect investment in the Debtor, and calls for the Debtor to pay an additional $450,000 to Credit Suisse from the Debtor's $600,000

---

[1] The Trustee's Letter cites cases outside of the Second Circuit purporting to claim that

remaining in the Debtor's account at Credit Suisse. (please see Turner Objection to the Trustee's Settlement with Credit Suisse),

- An arrangement in which the Debtor accepts zero for its claim, permits its adversary to retain its claims against the Debtor, and pays its adversary $450,000 of its $600,000 of cash falls below "the lowest point in the range of reasonableness." This is especially so in the absence, as is the case here, of an evidentiary hearing to permit the Fiduciaries to justify their actions against the estate and for their other clients and their statements that contradict documentary records.

- An arrangement that has no evidentiary proof of reasonableness, provides no material value to the Debtor, provides great value to the Fiduciaries' other clients can be rescinded and "will not unravel intricate transactions" or "knock the props out from under the authorization for every transaction that has taken place" or "create an unmanageable, uncontrollable situation for the Bankruptcy Court."

From the start of these proceedings, with the Cash Collateral Order, Amended Cash Collateral Order, and the Credit Suisse Settlement, the Fiduciaries have sought favorable treatment for their client Credit Suisse.[2] The Fiduciaries have mislabeled their arrangements as Rule 9019 "settlements," relying on the flexible standard articulated by the Supreme Court in TMT Trailer Ferry. They have hidden and misrepresented material facts to the Bankruptcy Court. They have downplayed and denied the connections between the Fiduciaries and the Fiduciaries' more favored clients that have benefited at the expense of the Debtor and its true stakeholders.

To aid their efforts and the collateral efforts of those they truly serve, the Fiduciaries have also spent extraordinary amounts of the Debtors' cash making demonstrably false allegations against Debtor and me to distract from the Fiduciaries' brazen violation of their duties. The Trustee's letter sent the evening of December 24, filed with *ad hominen* attacks, misrepresentations, and outright lies exemplifies the Fiduciaries' tactics including misrepresentation of the record.

---

[2] From the Trustee's Letter:

> The Trustee amd Credit Suisse negotiated an amended cash collateral stipulation and order (the "Cash Collateral Order") that was approved by the Court Bankruptcy in November 2012, and resulted in the return of approximately $1,000,000 in cash and the Helix stock to FILB. [Bankr. Dkt, No, 149.] Pursuant to the Cash Collateral Order, Credit Suisse retained approximately $600,000 in cash, which it was entitled to withhold to satisfy certain pre- petition legal expenses and secure payment of any post-petition legal expenses. Pursuant to the settlement agreement, Credit Suisse returned the remaining cash — about $150,000 net of post- petition setoffs — and the parties exchanged limited releases relating to the parties' prime broker relationship."

The Honorable Analisa Torres
January 6, 2015

- The Trustee's Letter falsely accuses me of "fraudulent conduct" and attempts to mislead this Court into believing that I have been found guilty of some wrongdoing but, in the one trial has been held in all these associated cases, there the Bankruptcy court found no fraud or incompetence (see Associated cases *In re: Soundview Elite et al* Bench Order of January 23, 2014).
- The Trustee's Letter falsely claims that Credit Suisse sold the Debtor's assets at "a better price" than my investment management company "ever obtained when it liquidated FILB's positions in the same stock" but in fact most of the Ion preferred stock was liquidated prior to Credit Suisse's sale and for a profit exceeding $70 million.  This fact and others, hidden by the Fiduciaries from the Bankruptcy Court, must be addressed.  They would have been revealed in documents had there been an evidentiary hearing.
- The Trustee's Letter seeks to characterize my efforts in these proceedings by selectively and inaccurately describing some of the United Community Banks settlement objections and appeals.  Strikingly, that settlement also called for a massive transfer of value from the Debtor to parties associated with the Fiduciaries as described in my brief for the appeal pending before Judge Sullivan.
- The Trustee falsely claims "Mr. Fletcher has raised these allegations numerous times... Judge Pauley rejected them" however Judge Pauley never rendered a decision on the merits of my allegations.  Instead, the Fiduciaries again succeeded in thwarting a review on the merits.
- Finally, the Trustee fails to disclose the maneuvering between the Fiduciaries and the trustee in an associated case to obtain a ruling, which I am appealing [*Ball v. Soundview Composite*, Ltd. 14-cv-8615-GHW], **declaring retroactively** that **non-debtors** could not use their own funds to operate their businesses and oppose the Fiduciaries' wrongdoing without the Bankruptcy Court's approval.

While the Trustee makes false allegations and statements to this Court, argues that I have no standing nor any chance of any recovery, that would only be the case if the Fiduciaries are permitted to avoid the revelations of appellate review and the justice that would result from their being held accountable for their wrongdoing.

Despite the Fiduciaries' success thus far, they failed to provide the Bankruptcy Court with evidence necessary for the Bankruptcy Court make an "informed and independent judgment as to whether a proposed compromise is fair and equitable." Such a judgment, as articulated by the Supreme Court in *TMT Trailer*, requires that:

> *the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the compromised claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be*

The Honorable Analisa Torres
January 6, 2015

*obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.*

In these cases, the Credit Suisse settlement and others have not been subjected to the scrutiny of an evidentiary hearing. Instead, the Fiduciaries, laboring under fatal conflicts, have made false statements and rushed the transfer of value from the Debtor to those Fiduciaries' more favored clients.

The Trustee argues that my appeal should be dismissed citing "In re: PC Liquidation Corp," which involves a very different settlement.[3] First no event has occurred "that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party." The fraudulent nature of causing the Debtor to waive a $30 million liability while not obtaining a waiver or recovery for the Debtor and causing the Debtor to make additional payments to the party that caused it great harm results in the possibility of very effective relief. The waiver can simply be cancelled. Nor can it be said that "implementation of that relief would be inequitable" because cancellation of such a fraudulent release and waiver causes no prejudice to Credit Suisse.

There has been no "comprehensive change of circumstances" that might impede any remedy granted in the appeal.

- The Trustee wrongly argues that "the *settlement* has closed" (emphasis added) but provides no evidence of such.
- In fact, regardless of the arrangements and actions of the Trustee, there is no *bona fide* settlement, only deception.
- The Trustee seeks to release Credit Suisse from liability exceeding $30 million, recover none of the estate's damages, and *pay* Credit Suisse additional value.
- The additional value the Trustee is paying Credit Suisse results from an agreement to allow Credit Suisse to keep all of estate's cash remaining at Credit Suisse beyond perhaps $150,000 which would be paid to the estate.
- The payment to the estate is immaterial and represents less than one-half of one percent of the value of cash and securities that Credit Suisse wrongly seized from the debtor days prior to its chapter 11 filing.

---

[3] This case's settlement involves the Debtor granting 75% of its cash held by its adversary to that adversary and releasing that adversary for harms valued in excess of $30,000,000. The remaining cash is immaterial and the settlement has nothing to do with the ultimate resolution of the chapter 11 case. In re PC Liquidation Corp, however, the settlement had a limited "Challenge Period," involved tens of millions of dollars, and was part of a "Section 363" sale that was integral to the resolution of the case.

The Honorable Analisa Torres
January 6, 2015

- The payment will have virtually no effect on the Debtor and the Debtor would forgo the opportunity to pursue Credit Suisse now or in the future.

Though not applicable in this context, the "Chateauguy II factors" each fail anyway.

- "The Court can still order effective relief" declaring the Trustee's arrangement a fraud, rescinding the release the Trustee apparently has granted Credit Suisse.  Even if the remaining $150,000 must be delivered Credit Suisse, it is immaterial.
- The debtor has a plan of "liquidation" not "reorganization" and thus "such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity."  Even if the debtor was to be reorganized the return of perhaps as much as $150,000 would have no affect on the reorganization and greatly benefit potential recoveries.
- The Trustee's arrangement by which it abandons claims in excess of $30 million by paying Credit Suisse $450,000 is simple and would "will not unravel intricate transactions" or "knock the props out from under the authorization for every transaction that has taken place" or "create an unmanageable, uncontrollable situation for the Bankruptcy Court;"
- Credit Suisse "who would be adversely affected by the modification ha[s] notice of the appeal and an opportunity to participate in the proceedings," and
- The lack of a stay does not "create[] a situation rendering it inequitable to reverse the order[]appealed from" for the reasons described above, namely the purported settlement is an artifice.  In any event, I and my colleague Stewart Turner, "pursued with diligence all available remedies" that each acting *pro se* could pursue, filing objections to the unreasonable settlement, objections to the undisclosed conflicts that led to it, appeals, and seeking stays of all proceedings.[4]

---

[4] The Trustee's letter describes my "relentless" efforts, despite proceeding *pro se*, without the benefit of counsel, to pursue just remedies:

> "Mr Fletcher also again raises his claims... has raised these allegations numerous times before the Bankruptcy Court and at least two times before this Court...Mr. Fletcher submitted a letter to the Bankruptcy Court seeking a stay of all proceedings... Mr Fletcher alleges that the Trustee and other fiduciaries to FILB failed to disclose conflicts of interest in the bankruptcy case and sought, among other things, a stay of **all** proceedings (emphasis added)..."

Letter from Michael Luskin to The Honorable Analisa Torres of December 24, 2014, pp 1, 2

The Honorable Analisa Torres
January 6, 2015

The Fiduciaries violations of bankruptcy rules, documents available to an evidentiary hearing, and the gross injustice of court-appointed bankruptcy fiduciaries transferring all the value of a chapter 11 estate to the more favored clients of those fiduciaries is an outrage that cannot be tolerated.  It offends the integrity of the bankruptcy system.  The outrageousness of what has occurred in these cases begs the question: how could this happen?  The answer can be found in the response of the high bidder that Credit Suisse rejected:

> "Well that explains it, never f--- with the Mafia or billionaires!"

Appellant Brief, page 9

As detailed in my brief in the appeal pending before Judge Sullivan[5], these associated chapter 11 cases and the wrongdoing within them are the result of parties associated with defendants in a civil rights litigation.  In violation of federal, state, and city anti-retaliation law, the defendants swore to destroy my family, and my funds, and me.  This vicious violation of the anti-retaliation laws of our city, state, and country and brazen breach of cardinal rules of bankruptcy should not escape the Court's scrutiny through deception and clever use of procedure.

Sincerely and respectfully submitted,

/s/ Alphonse Fletcher, Jr.
Alphonse Fletcher, Jr.

Cc:    Michael Luskin

---

[5] Fletcher v Davis, Disgorgement-*Vacateur* Brief, page 1:

> "This is an appeal to the United States District Court for the Southern District of New York from the Bankruptcy Court's June 17, 2014 Decision denying a motion for an order vacating retention of chapter 11 fiduciaries and requiring disgorgement of their compensation. Each court-appointed fiduciary serving Fletcher International, Ltd. (together "Fiduciaries" ) represented to the Court that it had "disclose[d] all facts" and connections. No connection could be hidden that "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." These Fiduciaries, however, hid and even denied representations of and connections to the estate's primary adversaries, parties associated with defendants in a civil rights lawsuit vowing to "destroy" the plaintiffs and their affiliates including Fletcher International, Ltd. Fiduciaries with connections to such parties could have interests "consistent with Defendant Barnes' threat to Fletcher in June 2010 that if Fletcher went ahead and vindicated his rights by filing this lawsuit, the [Dakota] Board would do everything in its power to destroy Fletcher and his reputation in the business community." The Fiduciaries secretly negotiated with those parties for compensation beyond the $10,000,00 they charged the estate then awarded the majority of the Fletcher International, Ltd. estate to those parties."

**From:** **Alphonse Fletcher** AFletcher@fletcher.com 
**Subject:** Re: Fletcher v. Davis (In re Fletcher International, Ltd.), Index No. 14-Civ.-09690
**Date:** January 6, 2015 at 9:54 PM
**To:** Torres_NYSDChambers@nysd.uscourts.gov
**Cc:** Michael Luskin luskin@lsellp.com

A

To the Honorable Judge Torres:

Attached to this email is my submission as requested by the Court.  I had trouble earlier with the ECF system but will continue to try to file this document on that system until approximately midnight in San Franscisco.  If not and if I am unable to resolve issues with another call to the ECF help desk tomorrow, I will get the document to the courthouse and your chambers tomorrow.

I respectfully request your patience with delays or missteps in my *pro se* filings.  I will do my best to comply with all rules and to correct quickly any errors that I can.

Sincerely and respectfully,
Alphonse Fletcher, Jr.

Dated: January 6, 2015
San Francisco, California

On Dec 24, 2014, at 9:52 AM, Stephan Hornung <hornung@lsellp.com> wrote:

Dear Judge Torres:

This firm represents, Appellee, Richard J. Davis in the above-referenced action.  In accordance with Your Honor's Individual Practices, I attach a courtesy copy of a letter from Michael Luskin, which was electronically filed on the docket today.

Respectfully submitted,


Stephan Hornung
Luskin, Stern & Eisler LLP
Eleven Times Square
New York, NY 10036

Direct: 212-597-8245
Main:  212-597-8200
Fax:  212-974-3205

hornung@lsellp.com
www.lsellp.com


<Doc 6 - Ltr from M. Luskin to J. Torres dated 12-24-14, In re Fletcher International, Ltd., Index No. 14-Civ.-09690.pdf>

