UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| IN RE:<br><br>FLETCHER INTERNATIONAL, LTD<br>                         Debtors. | Chapter 11<br><br>Case No. 14-cv-09690 (AT) |
|---|---|
| ALPHONSE FLETCHER, JR. (*pro se*),<br>                         Appellant.<br>v.<br>RICHARD J. DAVIS, ESQ.<br>                         Appellee. | *On Appeal from the United States Bankruptcy Court for the Southern District of New York (Honorable Robert E. Gerber)* |

Alphonse Fletcher, Jr., *pro se,*[1] ("Fletcher") respectfully submits this brief in reply to the brief submitted by Richard J. Davis, Esq., in his capacity as Chapter 11 Trustee (the "Trustee").

**PRELIMINARY STATEMENT**

In opposing Fletcher's appeal of the order issued by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") on October 15, 2014 (the "October 15 Order"), the Trustee continues to raise issues relating to waiver, standing, equitable mootness, and a variety of allegations.  The Trustee, however, must demonstrate that he presented the bankruptcy court with evidence sufficient to make an "informed, independent judgment" [Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson] regarding the

---

[1] I respectfully request that the Court accept this reply. I will do my best to correct any procedural or other

1

reasonableness of the Trustee's settlement with Credit Suisse ("Settlement"). The Trustee continues to submit his unsubstantiated allegations. "To make an informed and independent judgment, however, the court needs facts, not allegations." [id]

Yet, the bankruptcy court record does not provide "facts" supporting the reasonableness of the Trustee's Settlement. The record contains the Trustee's "allegations" devoid of the require substantiation expected after a two-year investigation costing $12 million. The Trustee again simply asks a court to trust him and to declare his facts "undisputed" without the court considering, in an evidentiary hearing or otherwise, the compelling, contrary facts that have appeared in the record in spite of the Trustee's effort to suppress them.

**Inadequacy of Information Provided by the Trustee:** Stewart Turner's objection in the bankruptcy court asserte, "neither the Trustee nor his attorney has provided Your Honor with the information to make Your own 'informed, independent decision.' How can Your Honor be expected to do so without being provided with the most basic and relevant facts?" Mr. Turner's objection notes some of the omitted information that would be reasonably necessary to make an informed decision including "the terms of the asset."

**FILB's Past Liquidations:** I dispute the assertion on page 32 of the Trustee's brief that Credit Suisse liquidated the securities at "a better price than Fletcher – through his asset management firm, FAM – ever obtained when it liquidated FILB's positions in the same stock. Fletcher quibbles that the Plan Administrator does not "include any verification" of this fact (App. Br. at 13), but notably, Fletcher does not claim it is untrue." My brief did claim the Trustee's statement was untrue.  I claim again now that the Trustee's statement is untrue. FILB's records and the Trustee's records reveal that FILB liquidated its Ion preferred stock for consideration exceeding the conversion value by tens of millions of dollars.

**Disclosure / "Routine Settlement" at Arms' Length:** I dispute the Trustee's suggestion on page 25 of his brief at which he claims that "Any purported connection to the Dakota does not create an interest adverse to FILB, and the fiduciaries had no reason to list any alleged connections on their disclosures" because "FILB is not a party to the Dakota lawsuit."[2]  In fact, no court has had the ability to examine the disinterestedness of the Trustee and his advisors because they have refused to disclose information

---

[2] ("The determination of adverse interest is objective and is concerned with the appearance of impropriety."). A disinterested person "should be divested of any scintilla of personal interest which might be reflected in his decision concerning estate matters." Vebeliunas, 231 B.R. 191-92 (citations and quotations omitted). The most modest interest or relationship will undo a person's disinterestedness if it "would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." In re Granite Partners, L.P., 219 B.R. 22, 23 (Bankr. S.D.N.Y. 1998)) (internal quotations and citations omitted).

3

regarding those relationships even when they have admitted that their previous direct denials of any connection were false (see for example the Trustee's belated admissions of his undisclosed connections to Anthony Smith and News Corporation and the Trustee's Counsel's belated admissions of his undisclosed connections to Credit Suisse).

**Superior Bid:**  I dispute the Trustee's claim that there was no superior bid. The Trustee chose not to include the full transcripts of the witnesses thus depriving the court of the information needed to properly assess the facts.

**Relevant Issues:**  The Trustee's brief on page 31 in footnote 11, asserts that his change of strategy[3] in the estate's damages case against Ion is irrelevant. The Trustee's brief on page 34 in footnote 13 describes D.E. Shaw's involvement in the Credit Suisse sale as a "red herring."  I dispute that these issues are irrelevant.  As described more thoroughly in the record, the combination of the windfalls captured by D.E. Shaw and Ion Geophysical,

---

[3] Memorandum Opinion page 32:
The bankruptcy trustee elected to hire new counsel to litigate the claims in this case in early 2013. Shortly after they were retained, Fletcher's new counsel attempted to introduce new damages theories and new expert reports. That request was denied by this court on March 8, 2013. Although the report filed by Fletcher's expert, Peter Fowler, had been floating around for years, it was not until Fletcher filed its opening pre-trial brief on July 3, 2013, that it specifically quantified its damages and disclosed for the first time that it was seeking total damages of over $78 million.

[Footnote:  Everyone has a bad day that comes with being human. For reasons that the trial record reflects, Fowler's testimony in this case fell into that category. Put succinctly, his expert report failed to take into account important factors and his trial testimony was inconsistent, lacked credibility, and involved unfairness to the defendants. It is therefore deserving of, and given, little or no weight.]

whose chairman, Jay Lapeyre[4], was exercising great influence over Louisiana affairs when the Louisiana pension fund fiduciaries sought the liquidation of all our funds, together with the Trustee's refusal to disclose his connections and interests with these individuals and their associates creates more than a "scintilla of personal interest which might be reflected in his decision concerning estate matters." [Vebeliunas, 231 B.R. 191-92]

---

[4] As described in the record, Jay Lapeyre reportedly exercised considerable political sway during the period in which three Louisiana pension funds and their agent Ernst & Young sought to liquidate "all funds in the FAM silo." [Fletcher Disgorgement and Vacateur Brief, page 5]

From the New York Times Magazine:

> "Louisianians who make money in oil buy politicians, or pieces of politicians, as Kentuckians in the same happy situation buy racehorses. Oil gets into politics, and politicians, making money in office, get into oil. The state slithers around it." These sentences, written by A. J. Liebling in 1960 at the dawn of the deep-water offshore-drilling era, seem quaint when read today. Louisiana no longer slithers in oil; it drowns in it. It is also high on natural gas, thanks to the recent boom in hydraulic fracturing. And at some point along the way, the state, which has the oil and gas, ceded political control to the industry, which needs the oil and gas...
>
> But soon after the lawsuit was announced, Jindal, who is widely expected to run for the Republican presidential nomination in 2016, indicated that he would go to unusual lengths to ensure that a settlement would never be negotiated. The nine-person levee board had been designed to gather experts and insulate them from political meddling. Now Jindal declared that he would refuse to appoint any candidates who supported the lawsuit. "To be very clear," Garret Graves, then the chairman of the Coastal Protection and Restoration Authority, told a local reporter, "the governor has said that the lawsuit is a litmus test — period." As it turned out, the chairman of the independent committee responsible for nominating candidates to the levee board, Jay Lapeyre, was the board chairman of ION Geophysical, a large oil and gas technology-service company...
>
> "I don't think there is any doubt that, except for the lawsuit, John Barry would be a shoo-in," Lapeyre said. (Lapeyre has since confirmed this account.) The board did not vote to nominate Barry again.
>
> In his place and for the other two seats, Jindal selected candidates who opposed the lawsuit and had little or no expertise in flood protection. Barry's successor was Lambert Hassinger Jr., a New Orleans lawyer whose firm, Galloway Johnson, boasts of representing "several of the largest drilling contractors and pipeline-transportation companies in the world, as well as companies engaged in all phases of oil and gas production." Once these appointments were made, a third of the levee board opposed its own lawsuit.
> http://www.nytimes.com/interactive/2014/10/02/magazine/mag-oil-lawsuit.html?_r=0

**Sworn Evidence**:  The Trustee asserts that I "did not submit sworn direct testimony" but I believed that in presenting my pleading to the court I was "certifying" that my "factual contentions have evidentiary support."[5]

**False Fraud Allegations:**  I dispute the Trustee's fraud allegations and his suggestion that there has been any adjudication on the merits that found fraud on my part.  To the contrary, the only adjudication on the merits found no fraud [see Judge Gerber's January 23, 2014, Bench Decision, In re Soundview Elite, Ltd. et al].  The Trustee's persistent misrepresentation of his *prima facia* case appears to be an "outright misstatement of fact."

Evidentiary hearings best resolve such stark disputes in sworn testimony regarding objective facts central to the matters.  Instead, the Trustee continues with his heretofore-successful tactic of asking the Court to believe blindly his unsupported claims while depriving the court of the

---

[5] RULE 9011. SIGNING OF PAPERS; REPRESENTATIONS TO THE COURT; SANCTIONS; VERIFICATION AND COPIES OF PAPERS  -   Fed. R. Bankr. P. 9011(b)(3)-(4).

By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances… (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

The certification in Rule 9011(b)(3) prohibits not only assertions of fact without sufficient support but also outright misstatements of fact, whether about the merits or about the case itself - so-called "litigation facts" of which counsel has first-hand knowledge. "It does not matter what the subject of a misstatement is. It is sanctionable to mislead the court." Gregory P. Joseph, Sanctions: The Federal Law of Litigation Abuse § 9(F) at 2-134 (4th ed. 2008); see also Georgene M. Vairo, Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures 337 (3d ed. 2004) ("Misrepresentations of the facts may obviously result in sanctions."); see, e.g., Brandt v. Schal Assocs., Inc., 960 F.2d 640, 651 (7th Cir. 1992); Samuels v. Wilder, 906 F.2d 272, 276 (7th Cir. 1990). Misleading omissions of fact are equally sanctionable. Joseph, supra, § 9(G) at 2-137; Vairo, supra at 338; see, e.g., In re Ronco, Inc., 838 F.2d 212, 218 (7th Cir. 1988).

substantial documentary evidence[6] he obtained from Fletcher International's investment advisor, directors, auditors, valuation experts, and advisors. [see Fletcher brief and Turner brief].

Conclusions of law are misrepresented by the Trustee or wrong if for no other reason because it is not possible, with a straight face, to suggest that it is lawful for chapter 11 fiduciaries to refuse to disclose the true nature of their past and ongoing ties to powerful adversaries sworn to and shown to be involved in destruction of the estates.

With what the Trustee describes as a "routine" arms'-length settlement, he intends to immunize the alliance that an evidentiary hearing would likely reveal led to the debtor's filing of the chapter 11 petition, the appointment of purportedly independent fiduciaries, the obstruction of full and fair participation in the proceedings by investors and other true parties in interest, the resulting failure of the adversary system, and the ensuing unopposed transfer through unreasonable settlements of the estate's value to

---

[6] See for example, DEBTORS' MEMORANDUM OF LAW IN OPPOSITION TO MOTIONS TO APPOINT A TRUSTEE; OR IN THE ALTERNATIVE, CONVERT OR DISMISS THESE CHAPTER 11 CASES, Soundview Elite, Ltd., *et al.,* Case No. 13-13098 (REG), page 2, footnote 2.

> "In a call by Debtors' counsel to Trustee's counsel on November 27, 2013, Trustee's counsel advised that he could not provide Debtors' counsel with the materials supporting the 579 footnotes which accompany the report, for two reasons: (i) because they are not separately organized in that order, and (ii) because "most of the stuff came from Fletcher anyway."

the estate's adversaries, for whom the fiduciaries had long worked according to public information presented in the record.

Even setting aside the willful refusal to disclose connections adverse to the estate, the false denial of connections to parties, the subsequent admission of some of those connections, and the publicly available confirmations such as Rule 2014 disclosures in other cases, an evidentiary hearing likely would reveal the misconduct of the fiduciaries and the devastating impact to the estate that directly resulted. The critical issues involved in this settlement cannot be resolved thoughtfully without an evidentiary hearing. Known facts suggest that an evidentiary hearing's likely revelations would shock the conscience of the Court.

## **CONCLUSION**

For the reasons set forth above, I respectfully submit that the October 15 Order should be reversed in its entirety and that an evidentiary hearing be held to resolve the disputed facts.

Dated: San Francisco, CA
      November 13, 2015

                                Alphonse Fletcher, Jr.

                                By: /s/ Alphonse Fletcher, Jr.
                                    Alphonse Fletcher, Jr.
                              188 Minna Street, San Francisco, CA 94105
                              Tel: 415-702-0070
                              Email: Alphonse Fletcher, Jr.
                              *Appellant Pro Se*