USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/4/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re:

FLETCHER INTERNATIONAL, LTD.,

                          Debtor

ALPHONSE FLETCHER, JR., *pro se*,

                          Appellant,

        -against-

RICHARD J. DAVIS, ESQ.,

                          Appellee

Chapter 11

Case No. 12-12796 (REG)

14 Civ. 09690 (AT)

**MEMORANDUM
AND ORDER**

ANALISA TORRES, District Judge:

    Alphonse Fletcher, Jr., Appellant, proceeding *pro se*, appeals an order issued on October 16, 2014 by the United States Bankruptcy Court for the Southern District of New York approving a settlement agreement (the "Settlement Agreement") between Fletcher International, Ltd. ("FILB"), and Credit Suisse Securities (USA) LLC ("Securities USA") and various entities related to Securities USA (together, "Credit Suisse"). Richard J. Davis, the Plan Administrator and former Chapter 11 Trustee for FILB, Appellee, moves to dismiss the appeal. In an order dated September 30, 2015, ECF No. 23, this Court DENIED Appellee's motion for the reasons stated below.

### BACKGROUND

    In July 2006, FILB entered into an agreement with Securities USA (the "Customer Agreement") pursuant to which Securities USA opened and maintained prime brokerage

accounts for FILB. Bankr. Dkt. No. 617 ¶ 4.[1] The Customer Agreement granted Credit Suisse, *inter alia*, "a continuing first priority security interest in, a lien on and a right of set-off" against all collateral posted by FILB in order to "secur[e] the discharge" of various obligations and contracts between FILB and Credit Suisse. *Id.* ¶ 6. FILB was also required to indemnify and reimburse Credit Suisse for reasonable attorneys' fees and expenses arising out of the Customer Agreement. *Id.*

In July 2011, Credit Suisse tried to terminate its prime brokerage relationship with FILB. Bankr. Dkt. No. 640 ¶ 10. After granting FILB a series of extensions, Credit Suisse terminated the relationship on June 7, 2012, liquidated shares of ION Geophysical Corporation ("ION") that FILB had pledged as collateral for its margin account, and used the proceeds to satisfy FILB's loan obligations to Credit Suisse. *Id.* ¶¶ 9-10; *see also* Bankr. Dkt. No. 393 at 111. On June 29, 2012, when FILB filed its Chapter 11 petition in the Bankruptcy Court, Bankr. Dkt. No. 1, Credit Suisse still held approximately $1.6 million in cash in FILB's account, Bankr. Dkt. No. 393 at 111. Following negotiations between Credit Suisse and Appellee in his capacity as Chapter 11 Trustee, approximately $1 million in cash was returned to FILB pursuant to a Bankruptcy Court order dated November 9, 2012. Bankr. Dkt. Nos. 149 ¶ 10; 617 ¶ 7. Under that order, Credit Suisse retained approximately $600,000 in cash, which it was entitled to withhold to satisfy certain legal expenses. Bankr. Dkt. No. 617 ¶ 8. Thereafter, in an effort to recoup any cash remaining after Credit Suisse subtracted its legal expenses, FILB and Credit Suisse entered into the Settlement Agreement at issue in this appeal. *Id.* ¶ 11. Pursuant to the Settlement Agreement, Credit Suisse was to return any remaining cash to FILB in exchange for, *inter alia*, limited releases as to all claims arising from the Customer Agreement and certain other contracts

---

[1] Unless otherwise noted, all docket numbers refer to documents filed in the underlying bankruptcy proceeding, No. 12-12796 (REG).

2

and obligations. *Id.*

On August 26, 2014, Appellee filed a motion with the Bankruptcy Court seeking approval of the Settlement Agreement. Bankr. Dkt. No. 617. As of the date of Appellee's motion, Credit Suisse was still in possession of approximately $200,000 in cash and had incurred additional legal expenses that it had not yet subtracted from that amount. *Id.* ¶ 10. Appellant and another individual, Stewart Turner, filed written objections. Bankr. Dkt. Nos. 630, 631. On October 15, 2014, the Bankruptcy Court held a hearing on Appellee's motion. Hrg. Tr. 29-35, ECF No. 20-3. Appellant did not appear. *Id.* Having considered the arguments of Appellee and Turner, the Bankruptcy Court issued a decision from the bench approving the Settlement Agreement, concluding that it was a reasonable exercise of Appellee's business judgment. *Id.* at 33. On October 29, 2014, Appellant filed a notice of appeal with the Bankruptcy Court. Bankr. Dkt. No. 655.

## DISCUSSION

I.  Standard of Review

When reviewing judgments rendered by bankruptcy courts, district courts act as appellate courts. *See In re Sanshoe Worldwide Grp.*, 993 F.3d 300, 305 (2d Cir. 1993). Findings of fact are reviewed for clear error, and conclusions of law are reviewed de novo. *In re Bennett Fundings Grp., Inc.*, 146 F.3d 136, 138 (2d Cir. 1998).

II.  Discussion

Appellee argues for dismissal of this bankruptcy appeal on three grounds: (1) that Appellant waived his right to appeal when he failed to personally appear at the Bankruptcy Court's October 15, 2014 hearing regarding the Settlement Agreement; (2) that Appellant is not a "person aggrieved" by the Bankruptcy Court's approval of the Settlement Agreement because his claim is equitably subordinated behind $120 million in allowed secured claims; and (3) that

3

the appeal is equitably moot.

### A. Waiver

Appellee cites decisions from other jurisdictions suggesting that standing to appeal a bankruptcy court order requires that the appellant have attended the hearing that resulted in the order. *See, e.g., In re Weston*, 18 F.3d 860, 864 (10th Cir. 1994); *In re Commercial W. Fin. Corp.*, 956 F.2d 686, 690-91 (7th Cir. 1992); *Brady v. Andrew*, 761 F.2d 1329, 1335 (9th Cir. 1985). However, Appellee cites no precedent from this Circuit adopting such a rule, presents no argument for doing so here, and does not address authority to the contrary. *See In re E.C. Ernst, Inc.*, 2 B.R. 757, 761 (S.D.N.Y. 1980) (rejecting argument that appellant's failure to appear foreclosed appeal); *see also In re Urban Broadcasting Corp.*, 401 F.3d 236, 244 (4th Cir. 2005) (same). Accordingly, the Court declines to bar Appellant's appeal on this ground.

### B. Standing

The Court also rejects Appellee's argument that Fletcher is not a "person aggrieved" within the meaning of the Bankruptcy Act because "there is no prospect of [Appellant] recovering anything in the FILB Bankruptcy," given that his indemnification claim against FILB has been equitably subordinated behind $120 million in allowed unsecured claims. Appellee Br. at 21, ECF No. 19. *See In re Barnet*, 737 F.3d 238, 242 (2d Cir. 2013) (stating that a person must suffer pecuniary harm as a result of a bankruptcy court's decision in order to be a "person aggrieved" and therefore able to appeal the order). Appellee relies on a decision from this district finding that a debtor was not an "aggrieved party" where there was no prospect of a surplus for the debtor in the bankruptcy proceedings. *In re Taylor*, No. 00 Civ. 5021, 2000 WL 1634371, at *2 (S.D.N.Y. Oct. 30, 2000). But *Taylor* involved "a chapter 7 debtor . . . , a member of a class that often lacks standing in the bankruptcy court as well as on appeal." *In re DBSD N. Am., Inc.*, 634 F.3d 79, 91 (2d Cir. 2011) (citations omitted). In contrast, Appellant is a

4

creditor in this case, and Appellee's argument that a creditor is not a "person aggrieved" when insufficient funds prevent that creditor from recovering in Chapter 11 proceedings is flatly contradicted by Second Circuit precedent. As the Second Circuit stated in *In re DBSD*, "none of our prior appellate standing decisions—at least none involving creditors—have turned on estimations of valuation, or on whether a creditor was in the money or out of the money." 634 F.3d at 90. Accordingly, the Second Circuit rejected an argument that a creditor lacked appellate standing where its unsecured claim allegedly "entitled it to nothing" given that the bankruptcy estate would not even generate enough funds to compensate secured creditors. *Id.* Applying this logic here, Appellant is not stripped of standing merely because his claim against FILB has been so equitably subordinated that he is unlikely to recover at all. Accordingly, the Court rejects Appellee's argument that Appellant lacks standing due to the equitable subordination of his claim.

    C.  Equitable Mootness

Under the doctrine of equitable mootness, courts may dismiss a bankruptcy appeal as moot "when, even though effective relief could conceivably be fashioned, implementation of that relief would be inequitable." *In re Chateaugay Corp.*, 988 F.2d 322, 325 (2d Cir. 1993) ("*Chateaugay I*"); *see also In re Charter Commn's Inc.*, 691 F.3d 476, 481-82 (2d Cir. 2012). The Second Circuit has recognized that equitable mootness may be appropriate in two situations: (1) when a reorganization is "substantially consummated"; or (2) where an unstayed order has resulted in a "comprehensive change in circumstances." *Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) (quoting *Chateaugay I*, 988 F.2d at 325 and *In re Chateaugay Corp.*, 10 F.3d 944, 952 (2d Cir. 1993) ("*Chateaugay II*")); *see also In re Delta Air Lines, Inc.*, 374 B.R. 516, 522 (S.D.N.Y. 2007). When a reorganization has been "substantially consummated" within the meaning of the Bankruptcy Code, there is a "strong presumption" that an appeal of an

5

unstayed order is moot. *Allstate*, 174 B.R. at 889; *see also In re Enron Corp.*, 326 B.R. 497, 502 (S.D.N.Y. 2005). This presumption is overcome only when five circumstances are present:

> (a) the court can still order some effective relief; (b) such relief will not affect "the re-emergence of the debtor as a revitalized corporate entity"; (c) such relief will not unravel intricate transactions so as to "knock the props out from under the authorization for every transaction that has taken place" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court"; (d) the "parties who would be adversely affected by the modification have notice of the appeal and an opportunity to participate in the proceedings"; and (e) the appellant "pursue[d] with diligence all available remedies to obtain a stay of execution of the objectionable order ... if the failure to do so creates a situation rendering it inequitable to reverse the orders appealed from."

*Chateaugay II*, 10 F.3d at 952-53 (citations omitted); *see also In re Delta*, 374 B.R. at 522-23; *Allstate*, 174 B.R. at 889.

By contrast, the test for determining whether an unstayed order has resulted in a "comprehensive change in circumstances" has not been expressly defined by the Second Circuit, but courts in this district have taken guidance from the factors articulated in *Chateaugay II*. *See, e.g., In re General Growth Properties, Inc.*, 423 B.R. 716, 723 (2010); *In re Delta*, 374 B.R. at 523. In applying the *Chateaugay II* factors in the settlement context, courts finding an appeal equitably moot have generally required more than simply a showing that the parties reached a settlement and exchanged releases. Rather, equitable mootness has been found, *inter alia*, where the parties entered into new agreements in reliance on the settlement agreement; engaged in complicated, irreversible financial transactions; or where the settlement was so integral to the Chapter 11 reorganization that undoing it would endanger the reorganization as a whole. *See, e.g., In re Delta*, 374 B.R. at 523-25; *In re Charter Comm'ns*, 691 F.3d at 485-86; *In re E. 44th Realty, LLC*, No. 07 Civ. 8799, 2008 WL 217103, at *7 (S.D.N.Y. Jan. 23, 2008); *see also In re San Patricio Cnty. Cmty. Action Agency*, 575 F.3d 553, 559 (5th Cir. 2009). For example, in *In re Delta*, the court found a "comprehensive change in circumstances" where Delta Airlines, after reaching a settlement and exchanging releases, had entered into several new agreements relating

6

to Delta's use of the Cincinnati/Northern Kentucky Airport as a hub and "distributed millions of dollars in freely tradeable stock through financial intermediaries that cannot be reversed." 374 B.R. at 523. In *In re Charter Communications*, the court found an appeal to be equitably moot where the settlement agreement resulted from "intense multi-party negotiations" and where undoing the releases that had been exchanged "would impact other terms of the agreement and throw into doubt the viability of the entire [plan of reorganization]." 691 F.3d at 485.

Unlike the agreements at issue in *In re Delta* and *In re Charter Communications*, the Settlement Agreement involved a straightforward transfer of a relatively small amount of cash and the exchange of limited releases. Appellee has not shown that complicated, irreversible financial transactions have taken place or that undoing these releases would endanger FILB's Chapter 11 reorganization as a whole. Although it is true that Appellant failed to seek a stay of the Bankruptcy Court's order approving the Settlement Agreement (a relevant consideration under *Chateaugay II*), it cannot be said at this stage that this Court is incapable of ordering effective relief or that such relief will unravel "intricate transactions" and "create an unmanageable, uncontrollable situation for the Bankruptcy Court." *Chateaugay II*, 10 F.3d at 952; *see also In re Chateaugay Corp.*, 167 B.R. 776, 779 (S.D.N.Y. 1994) ("*Chateaugay III*") (declining to find appeal of bankruptcy order approving settlement agreement equitably moot); *In re Delta*, 374 B.R. at 523 (noting that *Chateaugay III* "only involved a surety's payment to the debtor in return for a release of claims"). Accordingly, the appeal is not equitably moot.

## CONCLUSION

For the reasons stated above, Appellee's motion to dismiss is DENIED.

SO ORDERED.

Dated: January 4, 2016
New York, New York

_____
ANALISA TORRES
United States District Judge